Shantee D. HAYWARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–01–01185–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 22, 2003.

Rehearing Overruled Oct. 2, 2003.

Jerome Godinich, Jr., Houston, for appellant.

Donald W. Rogers, Jr., Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Shantee D. Hayward appeals her conviction for murder. We find the evidence legally sufficient to support appellant's conviction, but reverse the trial court's judgment and remand for a new trial be-

cause the trial court erroneously denied appellant's request for a jury instruction on assault as a lesser-included offense.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Police arrived at the complainant's apartment after receiving a suspicious-event call. Two sets of bloody footprints made a short trail leading away from the front door of the apartment. Inside, police found the complainant's body in a hallway near the bathroom. Blood marks on the wall suggested that the complainant's body was dragged from the living room to the hallway. The complainant had been stabbed over fifty times, and there was blood throughout the apartment. Although several knives and broken glass were scattered on the living-room floor, there were no fingerprints. A downstairs neighbor told police she had heard a violent fight in the complainant's apartment about an hour before the police arrived.

Crime Stoppers tips and the complainant's caller-identification device led police to appellant, the complainant's estranged wife. They arrested appellant on an unrelated parole violation after determining that she was driving the same car the neighbor saw speed away from the murder scene. Appellant initially told police that she did not know her husband's whereabouts or when she last saw him. However, she later admitted she was at the murder scene and eventually decided to make a videotaped statement about the events surrounding the complainant's death.

According to her statement, appellant traveled to the complainant's apartment with her boyfriend, Marcus Hawkins, early one morning. The purpose of the trip was to ask the complainant for money with which appellant could buy crack cocaine. Appellant claims they saw a third person, known only as "Chop," as they were driving toward an open gate at the complain-ant's apartment complex. To appellant's purported surprise, Chop was also en route to the complainant's apartment so he entered the car and rode with Hawkins and appellant until appellant parked the car. Appellant and Chop exited the car together and walked to the complainant's apartment. Hawkins waited in the car.

Appellant said she and the complainant began to wrestle when the complainant refused to give her any money, and Hawkins came upstairs and also began to wrestle with the complainant. According to appellant's statement, when the complainant escaped from Hawkins, Chop came running out of the kitchen and began stabbing the complainant. Appellant told police that she and Hawkins fled the scene after the complainant collapsed behind the front door of the apartment. Appellant stated that Chop was the only one who stabbed the complainant. The police used computer databases to search for Chop but were unable to find him. They presented appellant with a photo array of men who went by "Chop," but appellant said none of them was the alleged third person.

A jury found appellant guilty of murder and assessed punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

## II. ISSUES PRESENTED

Though we do not reach all of them, appellant presents the following issues for review:

(1) Did the trial court reversibly err by denying appellant's oral motion for continuance?

(2) Was trial counsel ineffective in failing to preserve error on the trial court's denial of appellant's motion for continuance?

(3) Was the evidence legally sufficient to support appellant's murder conviction?

(4) Was trial counsel ineffective in failing to object to hearsay testimony?

(5) Was the State erroneously allowed to mischaracterize the evidence during closing argument?

(6) Did the trial court reversibly err by denying appellant's request for an instruction on assault as a lesser-included offense?

### III. ANALYSIS AND DISCUSSION

#### A. Was the evidence legally sufficient to support appellant's murder conviction?

■■■ In her third issue, appellant argues the evidence adduced at trial is legally insufficient to prove she participated in the murder directly or as a party. In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellants' evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The jury, as the trier of fact, "is the sole judge of the credibility of witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v.*

*State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

We must decide whether a rational trier of fact could have found beyond a reasonable doubt that appellant: (1) intentionally [1] or knowingly [2] caused the death of the complainant or (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of the complainant. *See* TEX. PEN.CODE §§ 19.02(b)(1) and (2). Moreover, because the jury was charged on the law of parties it could have reached its verdict by deciding that Hawkins and or Chop committed each element of the offense and appellant, "acting with intent to promote or assist the commission of the offense, ... solicit[ed], encourage[d], direct[ed], aid[ed], or attempt[ed] to aid the other person to commit the offense." *See* TEX. PEN.CODE § 7.02(a).

■■■ Circumstantial evidence may be used to prove that one is a party to an offense. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App.1994). Although presence at the scene of an offense alone is insufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant. *See id.* In determining whether the accused was a party, it is proper to look to

---

1. A person acts intentionally with respect to the result of her conduct when it is her conscious objective or desire to cause the result. *See* TEX. PEN.CODE § 6.03(a).

2. A person acts knowingly with respect to the result of her conduct when she is aware her conduct is reasonably certain to cause the result. TEX. PEN.CODE § 6.03(b).

events occurring before, during and after the commission of the offense, and to rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Id.* The standard of review on legal sufficiency of the evidence is the same for both circumstantial and direct evidence. *King v. State,* 29 S.W.3d 556, 565 (Tex.Crim.App.2000). Moreover, it is not necessary that every fact point directly and independently to appellant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *See Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993).

In her videotaped statement, appellant admitted she and Hawkins were at the complainant's apartment when the complainant was murdered. Appellant also stated: (1) when the complainant refused to give appellant money, she and Hawkins wrestled with him; (2) eventually, Hawkins restrained the complainant so appellant could hit him; and (3) when the complainant got away from Hawkins, a third person, Chop emerged from the kitchen and began stabbing the complainant.

Although appellant said Chop was coincidentally present and responsible for the murder, she did not know whether Chop repeatedly stabbed the complainant with a knife or a piece of glass, or what part of the body Chop stabbed. When asked whether anyone at the scene wore socks or gloves over the hands, appellant first answered, "No, I can't recall." However, she then clarified that she and Hawkins did not cover their hands, but said Chop may have covered his hands. Appellant said she and Chop were close and indicated that she had known him for approximately two years. Nevertheless, she did not know Chop's real name, where he lived, with whom he associated, or any establishments he frequented. Police officers were

unable to locate Chop after an extensive investigation, and two detectives testified that they believed appellant invented Chop. Detective Garretson also testified that appellant's gestures indicating her own hitting motions on the videotaped statement were consistent with stabbing motions.

Physical evidence also supported the State's theory that two people were responsible for the murder because there were two sets of bloody footprints outside the apartment. Moreover, although appellant cleaned her car after the murder, there was blood in her car and on Hawkins's shoes. Appellant said that the shoes and scrubs she was wearing when she was arrested were the ones she wore at the murder scene. However, there was no blood on them, and Detective Garretson testified, based on his training and experience, that they could not be the same clothes because the absence of blood on them was inconsistent with the large amount of blood at the crime scene. Detective Garretson also testified that an informant told him appellant said she hid her bloody clothes at an abandoned house.

The jury had the duty to resolve the conflicting evidence in this case. *See Anderson v. State,* 701 S.W.2d 868, 872–73 (Tex.Crim.App.1985). "Simply because the jury found appellant's evidence unconvincing is not grounds for finding insufficient evidence to support the verdict." *Id.* Detective Garretson's expert testimony discredited appellant's statements that a third person was present, that she hit the complainant (but did not stab him) and that she was wearing the unstained clothes and shoes at the crime scene. *See Barcenes v. State,* 940 S.W.2d 739, 745 (Tex. App.-San Antonio 1997, pet. ref'd) (holding evidence that appellant tried to cover up his actions and expert medical testimony discrediting appellant's explanation of inju-

ries was sufficient to sustain murder conviction). If the jury believed appellant attempted to fabricate evidence, it was entitled to regard this as showing consciousness of guilt. *See King,* 29 S.W.3d at 565; *Torres v. State,* 794 S.W.2d 596, 598–600 (Tex.App.-Austin 1990, no pet.). From this evidence, a rational trier of fact could have concluded, beyond a reasonable doubt, that appellant intentionally or knowingly caused the death of her husband or that she intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of her husband.

In the alternative, the evidence was sufficient to show that Hawkins and appellant acted together. Hawkins and appellant traveled to the complainant's apartment together early in the morning to get money from him. They both wrestled with the complainant, and appellant said she was swinging at the complainant while Hawkins restrained him. Appellant and Hawkins also fled the scene together after appellant told Hawkins, "We need to get out of here." They went to Hawkins's mother's house, chain smoked, and then cleaned the car. In her videotaped statement, appellant said "we [appellant and Hawkins] wasn't [sic] trying to kill him" and "things was [sic] not supposed to happen like this." Therefore, there is also legally sufficient evidence to support appellant's conviction under the law of parties.

We find the cumulative force of all the incriminating circumstances in this case was sufficient to allow the jury to find appellant guilty beyond a reasonable doubt. *See Johnson,* 871 S.W.2d at 186. Accordingly, we conclude the evidence was legally sufficient to sustain the jury's verdict, and we overrule appellant's third issue.

## B. Did the trial court reversibly err by denying appellant's request for an instruction on assault as a lesser-included offense?

 In her sixth issue, appellant argues that the trial court reversibly erred by denying her request for a jury instruction on assault as a lesser-included offense of murder. Under article 36.19 of the Texas Code of Criminal Procedure we review alleged charge error by answering two questions: (1) whether error actually existed in the charge; and (2) whether sufficient harm resulted from the error to result in a reversal. *See Posey v. State,* 966 S.W.2d 57, 60 (Tex.Crim.App.1998).

 In this case, there was error in the charge if appellant was entitled to a jury instruction on assault as a lesser-included offense of murder. Whether an offense is a lesser-included offense of the offense charged is determined on a case-by-case basis by looking at the facts of the case and the proof at trial. *Bartholomew v. State,* 871 S.W.2d 210, 212–13 (Tex.Crim.App.1994). A defendant is entitled to a lesser-included offense instruction when two conditions are met: (1) the lesser-included offense is included within the proof necessary to establish the offense charged; and (2) some evidence exists in the record that would permit a jury to rationally find that if the defendant is guilty, she is guilty only of the lesser offense. *Id.*

 Under the first prong, article 37.09 of the Texas Code of Criminal Procedure governs whether a lesser offense is a lesser-included offense. *Ford v. State,* 38 S.W.3d 836, 842 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Article 37.09 provides that an offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to

establish the commission of *the offense charged;*

(2) it differs from *the offense charged* only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from *the offense charged* only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit *the offense charged* or an otherwise included offense.

TEX.CODE CRIM. PROC. art. 37.09 (emphasis added). If none of the subsections of article 37.09 applies, the lesser offense is not a lesser-included offense as a matter of law, and the inquiry is over. *Ford,* 38 S.W.3d at 842. Each subsection of article 37.09 defines the lesser-included offense in relation to the *offense charged.* This definition is required because a lesser-included offense must be necessarily included within the greater offense to satisfy requirements of due process and notice. *Jacob v. State,* 892 S.W.2d 905, 907 (Tex.Crim.App.1995). A defendant cannot constitutionally be convicted of an offense not subsumed in the offense charged but nevertheless shown by the evidence presented at trial because the State, in proving the offense charged, also proved another offense. *See id.*

In this case the indictment alleged in pertinent part that appellant did:

" . . . unlawfully intend to cause serious bodily injury to [the complainant] and did cause the death of the Complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely by stabbing the Complainant with a deadly weapon, namely a knife.

. . .

. . . [and appellant] did . . . unlawfully intend to cause serious bodily injury to [the complainant] and did cause the death of the Complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely by stabbing the Complainant with a deadly weapon, namely a piece of glass."

**1. Did the indictment require the State to prove appellant assaulted the complainant?**

A lesser-included offense determination under article 37.09(1) is made by looking at (1) the elements of the offense actually charged; (2) the statutory elements of the offense sought as a lesser-included offense; and (3) the evidence presented at trial to prove the elements of the charged offense. *Jacob,* 892 S.W.2d at 907–08. This means that, first, we conduct a statutory, and then, a factual analysis, in light of the charged offense. *Id.* at 908. Next, we examine the elements of the offense claimed to be a lesser-included offense to see if these elements are functionally the same or less than those required to prove the charged offense. *Id.* Then, we examine the proof or facts actually presented to prove the elements of the charged offense to see if that proof also shows the lesser-included offense. *Id.*

Applying article 37.09(1) to this case, the "facts required to establish" the charged offense are that appellant intended to cause serious bodily injury to the complainant and caused his death by intentionally and knowingly stabbing him with a knife or a piece of glass. *See Jacob,* 892 S.W.2d at 908–09 (explaining that in this context "facts required" means the evidence legally required to prove the elements of the charged offense).

The offense of assault occurs when a person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; or

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PEN.CODE § 22.01(a). Comparing the statutory elements of assault to the charged offense, assault is established by proof of the same or less than all the facts required to establish that appellant committed murder as charged in the indictment. *See* TEX.CODE CRIM. PROC. art. 37.09(1); *Jacob*, 892 S.W.2d at 908–09. In proving appellant intentionally and knowingly caused the complainant's death by stabbing him, the State was *required* to prove appellant intentionally, knowingly, or recklessly caused bodily injury to the complainant. *See* TEX. PEN.CODE § 22.01(a)(1); *Jacob*, 892 S.W.2d at 908–09.

The State argues that appellant cannot be guilty of assault because death is included in the definition of "serious bodily injury" but not in the definition of "bodily injury." However, the plain language of the Penal Code shows death is a form of bodily injury. *See Sells v. State*, No. 73,-993, 2003 WL 1055328, at *9, —— S.W.3d ——, —— (Tex.Crim.App. Mar.12, 2003) (explaining appellate court interprets statute in accordance with its plain language unless it is ambiguous or conducive to absurd results the Legislature could not have intended). The Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." TEX. PEN.CODE § 1.07(a)(8). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigure-

ment, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN.CODE § 1.07(a)(46). The plain language of the statute therefore defines serious bodily injury in terms of bodily injury; though some forms of bodily injury are not "serious bodily injury," all forms of "serious bodily injury" include bodily injury.

Moreover, death is also bodily injury under the plain meaning of the Penal Code because it is an "impairment of physical condition." *See* TEX. PEN.CODE § 1.07(a)(8). In proving appellant caused the complainant's death, the State necessarily had to prove that appellant caused bodily injury to the complainant. *See Cumbie v. State*, 578 S.W.2d 732, 735 (Tex. Crim.App.1979) (holding that death necessarily involves bodily injury as defined in the Penal Code), *overruled on other grounds by Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984); *see also Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

Having determined assault, as statutorily defined, is necessarily proven by the same or fewer than all of the facts required to establish the charged offense, it is necessary to examine whether the proof actually presented at trial showed assault. *See Jacob*, 892 S.W.2d at 908. In making its case, the State relied heavily on appellant's videotaped statement in which she blamed the murder on a third person named Chop. In the statement, appellant claimed she only wrestled with the complainant, hit him with her hands, and swung at him. These facts are sufficient to show appellant assaulted the complainant. *See Bartholomew*, 871 S.W.2d at 213 (finding speeding and racing were lesser-included offenses of reckless driving when the State relied on evidence of speeding and racing to establish offense of reckless

driving); *see also Letson v. State*, 805 S.W.2d 801, 806–07 (Tex.App.-Houston [14th Dist.] 1990, no pet.) (holding kicking that caused pain sufficient to establish assault). Accordingly, under the facts of this case, assault is a lesser-included offense of murder as charged in the indictment. *See* TEX.CODE CRIM. PROC. art. 37.09(1).

### 2. Could a jury rationally find appellant guilty of only assault?

 As set forth above, appellant was entitled to a jury instruction on assault as a lesser-included offense only if evidence was presented that would allow a jury to rationally find that, if appellant was guilty, she was guilty of only assault. *See Bartholomew*, 871 S.W.2d at 212–13. In determining whether an instruction on a lesser-included offense should have been given, we may not consider the credibility of the evidence or whether it conflicts with other evidence or is controverted. *See Penry v. State*, 903 S.W.2d 715, 755 (Tex. Crim.App.1995). Here, if the jury believed appellant's statement that Chop was responsible for the murder, it rationally could have found that appellant only assaulted the complainant. Appellant's contention that three people (in addition to the complainant) were present was arguably corroborated by the downstairs neighbor's testimony that after she heard a thump like a head hitting the ground in the bathroom and two people exit the apartment, she heard loud noise from the bedroom as if someone was in the apartment searching for something. The absence of marks on appellant's body also arguably supports appellant's position that she did not stab the complainant. Based on these facts, the jury rationally could have found that appellant was only guilty of assault. The trial court therefore erred when it denied appellant's request for an instruction on assault as a lesser-included offense.

### 3. Did the charge error harm appellant?

Appellant preserved error in the trial court. Thus, we consider whether appellant suffered some harm because of the failure to include a jury instruction on assault as a lesser-included offense. *See Almanza*, 686 S.W.2d at 171. The degree of actual harm suffered must be determined by looking not just at the jury charge, but at "any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174; *see also Marvis v. State*, 36 S.W.3d 878, 880 (Tex.Crim.App. 2001) (stating the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole). The record reveals that the jury deliberated for more than a day and had a very difficult time reaching a unanimous verdict. The record also contains a jury note stating that, at one point in its deliberations, the jury was split seven against five in favor of finding appellant not guilty. We find appellant was harmed because this divided jury was not allowed to consider the lesser-included offense of assault in connection with the charge of murder. *See Mitchell v. State*, 807 S.W.2d 740, 742 (Tex.Crim. App.1991). Based on this record, we hold the trial court's erroneous failure to charge the jury on assault as a lesser-included offense was calculated to injure appellant's rights and caused appellant some harm. *See id.; Almanza*, 686 S.W.2d at 171. Accordingly, we sustain appellant's sixth issue and find this case must be remanded to the trial court for a new trial. Having held appellant is entitled to a new trial, we do not reach appellant's first, second,

fourth, and fifth issues. *See* TEX.R.APP. P. 47.1.

## IV. CONCLUSION

The evidence in this case is legally sufficient to sustain appellant's conviction. However, the trial court's failure to instruct the jury on assault as a lesser-included of murder is reversible error under the facts of this case. Accordingly, we reverse the trial court's judgment and remand for a new trial.